UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| RONALD DALE BURSTON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:12cv30 SNLJ |
| | ) | |
| MICHAEL HAKALA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM and ORDER**

Presently before the Court are plaintiff's motion to add party and motion for a temporary restraining order (#98), defendant Russell Graham's motion for summary judgment (#100), defendant Graham's motion to dismiss (#105), and plaintiff's motion for summary judgment (#106).

**I.     Background**

The following facts are undisputed. Plaintiff is a prisoner in the Missouri Department of Corrections ("MDOC"). He has numerous medical problems including infection with the Human Immunodeficiency Virus ("HIV"). The remaining defendant in this matter is Dr. Russell Graham, a physician who contracts with Corizon, Inc., to provide medical care to prisoners at the Southeast Correctional Center ("SECC").

The claim presently at issue involves defendant Dr. Russell Graham's treatment of plaintiff's swollen tongue and throat complaints around July and August 2010. On January 9, 2010, plaintiff self-declared an emergency, claiming his tongue and throat were swollen. He was diagnosed with a possible allergic reaction and given Benadryl.

1

On January 22, he appeared with a similar complaint, and his medication was changed. He appeared again on July 29, 2010, when he saw Dr. Graham. His oxygen saturation was 96%; his mouth and throat showed no sign of lesion, and there was some tongue swelling and left facial numbness. A neurological check was performed and Benadryl was prescribed.

Two days later, plaintiff saw Dr. Hakula. Blood saturation was 98%, and plaintiff could speak and his voice was clear. There was no drooling, his face was symmetrical, and he had normal sensation in his face. He had eaten sausage for breakfast but claimed he could not swallow water. He was admitted to the infirmary for observation and placed on a liquid diet. He was also prescribed Prednisone and Methylpred. He refused medication, however, saying he was unable to swallow. The next day, August 1, plaintiff was still in the infirmary with a swollen tongue. He claimed he could not swallow, but he had requested an orange drink which he drank completely. He then stated he believed he could eat a "snack sack." He was told to continue his liquid diet and crush his medication to take it.

On August 2, plaintiff said he could not swallow his medication and refused it. He was given Mycostatin oral solution by Dr. Graham. The following day, defendant Graham ordered a feeding tube and Ensure supplements. The tube was placed at 2:00 p.m., and plaintiff was given one can of Ensure and six ounces of water. An hour later, plaintiff threatened to pull out the feeding tube. Defendant Graham visited plaintiff and plaintiff agreed to keep the tube in. However, at 7:00 p.m., plaintiff pulled out the tube.

Defendant Graham discontinued plaintiff's liquid diet on August 10. Plaintiff did not see Dr. Graham again. On August 12, plaintiff was returned to a normal diet at his own request.

## II.     Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962).  The burden is on the moving party.  *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).  After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts.  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts.  *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983).  The court is required to resolve all conflicts of evidence in favor of the nonmoving party.  *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

Plaintiff does not contest any of the above facts, many of which appear in his own complaint, and which are supported by the medical records.  Plaintiff contends, however, that Dr. Graham violated his Eighth Amendment right to be free from cruel and unusual punishment in the course of treating plaintiff's tongue and throat problems.  Specifically,

plaintiff suggests that Dr. Graham should have sent plaintiff to a hospital or to a specialist and that Dr. Graham displayed loud outbursts of behavior.

To establish a constitutional violation based on inadequate medical care, the plaintiff must show that the defendant was deliberately indifferent to a serious medical need. *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009). "Deliberate indifference has both an objective and a subjective component." *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006). The objective component requires a plaintiff to demonstrate an objectively serious medical need. *Grayson v. Ross*, 454 F.3d 802, 808-09 (8th Cir. 2006). A "serious medical need" is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d. 778, 784 (quoting *Camberos v. Branstad*, 73 F.3d. 174, 176 (8th Cir.1995)); *see also Moore v. Jackson*, 123 F.3d. 1082, 1086 (8th Cir. 1997) ("A medical need is serious if it is obvious to the layperson or supported by medical evidence.").

In order to satisfy the subjective component of his medical claim, the plaintiff must show that the defendants knew of, yet deliberately disregarded, an excessive risk to the inmate's health. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (quoting *Logan v. Clarke*, 119 F.3d. 647, 649 (8th Cir. 1997)). A prison official may be liable if he knows that an inmate faces a substantial risk of serious harm and fails "to take reasonable measures to abate it." *Coleman*, 114 F.3d. at 785 (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). The plaintiff must establish a "mental state akin to criminal recklessness." *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009) (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)).

Even assuming plaintiff's condition --- a swollen tongue and throat --- could be considered a serious medical condition[1], plaintiff's complaint amounts to a disagreement with the medical care provided by Dr. Graham. Mere disagreement with the medical care provided is insufficient to state a constitutional claim. *Randal v. Wyriek*, 642 F.2d 304, 308 (8th Cir. 1981). Here, plaintiff was treated promptly, initially with a treatment that had previously been shown effective, and plaintiff was admitted to the infirmary for observation while his symptoms were at their worst. However, plaintiff's own actions belie the stated seriousness of his condition --- he ate sausage and drank orange drink and stated he could eat a snack sack while experiencing the swollen tongue and throat, and he removed his feeding tube. Although plaintiff complains he was sent to administrative segregation after being discharged from the infirmary, he does not allege that defendant Graham was involved with that assignment. To the extent plaintiff now argues that Dr. Graham was somehow responsible for mistreatment regarding leg pain, again, plaintiff made no allegations regarding Dr. Graham other than with respect to plaintiff's tongue and throat swelling. Finally, even taking as true plaintiff's allegations regarding angry outbursts by Dr. Graham, the plaintiff does not allege the outbursts took place while Dr. Graham was providing treatment to plaintiff or that they affected his treatment substantively.

Dr. Graham's motion for summary judgment will therefore be granted. Plaintiff's will be denied.

**IV.    Plaintiff's Motion to Add Parties and for Temporary Restraining Order (#98)**

Plaintiff's motion states that he is being mistreated by prison staff in retaliation for his pursuit of legal claims in this lawsuit. He wants to add ten additional defendants to

---

[1] As discussed below, plaintiff's behavior belies the alleged seriousness of his condition.

his case, and he seeks a restraining order against them. This Court denied a similar request to add parties and address mistreatment in November 2014 (#96). As with the earlier request, plaintiff does not allege that the parties he seeks to add have anything to do with the matter currently before the Court. Plaintiff is free to file a new lawsuit regarding those new claims; however, the Court will not now prolong and complicate the instant case, which will be closed after the filing of this Order and the Judgment that follows.

## V.  Defendant's Motion to Dismiss (#105)

In light of this Court's decision to grant summary judgment to defendant Graham, defendant's motion to dismiss will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to add party and motion for a temporary restraining order (#98) and plaintiff's motion for summary judgment (#106) are **DENIED**.

**IT IS FURTHER ORDERED** that defendant Russell Graham's motion for summary judgment (#100) is **GRANTED.**

**IT IS FINALLY ORDERED** that defendant Graham's motion to dismiss (#105) is **DENIED as moot**.

Dated this  20th  day of July, 2015.

```
                                    _____
                                    STEPHEN N. LIMBAUGH, JR.
                                    UNITED STATES DISTRICT JUDGE
```